## McELROY v. AMERICAN RUBBER TIRE CO.

(Circuit Court of Appeals, Second Circuit. April 16, 1903.)

### No. 154.

1. ACTION FOR BREACH OF CONTRACT—DEFENSES—DECREE OF INJUNCTION.

A decree in equity finding that an article made and sold by defendant corporation infringed a patent, and enjoining further infringement, is not available to the defendant as a defense to an action by a third person for breach of a contract to supply him with the article, where it is shown that prior to the entry of such decree the complainant in the suit, through purchase of its stock, obtained entire control of the defendant.

In Error to the Circuit Court of the United States for the Southern District of New York.

C. Walter Artz, for plaintiff in error.

Joseph A. Stetson, for defendant in error.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The action is for damages for breach of the following written contract:

"Contract made March 3rd, 1897, between the American Rubber Tire Company of New York, of the first part, and Henry P. McElroy, of Baltimore, Md., of the second part. The first party agrees to supply the second party with all special tools and machinery requisite and necessary for applying solid, cushion and pneumatic rubber tires to wagon wheels (not including swedges for welding channel steel) for the sum of $500 cash. First party further gives free use of its moulds for making rubber and rolls for making steel channel to second party and will instruct them in all practical methods and

details in putting on solid, cushion and pneumatic rubber tires as is practiced by first party. Also give second party sole right to manufacture rubber tired wheels in Baltimore, under patents that it now or may hereafter own. Second party agrees to pay said $500 as above provided, and to procure all rubber and steel that it may use for solid and cushion rubber tires from first party's moulds until the gross amount of its purchases of rubber and steel have reached $25,000. It is understood that first party will obtain from the rubber and steel companies a commission for the use of their moulds and rolls which shall be in the nature of a royalty, the second party however shall be free to make such price and terms of credit with the rubber company and rolling mill as they may be able to do. There shall be no other charges for royalties or commission against second party. It is understood that the price charged for rubber shall not exceed seventy cents per pound and for steel channel four cents per pound, and that first party's commissions and royalties will be paid by the rubber and steel companies. It is understood that first party shall not grant rubber tire rights or licenses for putting on rubber tires within Baltimore and vicinity. After the gross amount of purchases of second party shall have amounted to $25,000 second party at its option shall have the right to continue the use of first party's moulds and rolls by paying to first party three cents per pound commission on its purchases of rubber and one-half cent. per pound commission on its purchases of steel. It is further agreed by the party of the first part that should legal proceedings be brought against the party of the second part for infringement of any patents covering said wheels or tires that the said second party shall immediately deliver the first party all papers and documents that may have been delivered to party of the second part in such proceedings, and party of the first part shall assume thereafter direct and control all litigation and court proceedings connected with such alleged infringements and shall save harmless the party of the second part from all costs and expenses connected with any such litigation or in consequence of the infringing of any patents that may cover said wheels or tires. This agreement shall bind the successors and assigns of respective parties.

"American Rubber Tire Co.,
"J. F. Aldrich, Sec. & Mgr.
"Henry P. McElroy."

The complaint, after averring what in the opinion of the pleader the defendant by this contract undertook to do, charged, as breaches of such undertaking, that defendant refused to supply the plaintiff or cause him to be supplied with rubber and steel under said contract, and "violated the terms of said exclusive right to put rubber tires upon carriages," etc., "in Baltimore and vincinity."

The answer contains certain admissions and denials, some affirmative defenses, and a counterclaim of $255 for rubber tires supplied to plaintiff. The reply admitted the receipt of the tires and their value, but averred that payment therefor was contingent upon a faithful carrying out of the contract by defendant. At the close of plaintiff's case the court directed a verdict in favor of defendant for the counterclaim.

The record is in most unsatisfactory shape. From the inception of the trial plaintiff devoted his attention almost entirely to anticipating and avoiding one of the affirmative defenses. In consequence there is a great mass of testimony which should not have been introduced until after plaintiff's case was closed. The particular defense thus introduced was this: After the contract was made, and both parties had entered upon its performance, defendant changed the form of its moulds for rubber tires, thus producing a tire of a different shape. It was claimed by another corporation, the Rubber Tire Wheel Com-

pany, that this new shape infringed one of its patents. Suit was brought by it against the defendant in this case, and on February 1, 1899, a final decree was entered sustaining the patent and enjoining defendant from manufacture or sale. The decision of the Circuit Court in the cause at bar was based wholly upon that decree, the judge holding that such decree was a complete defense to any claim for damages for failing to continue to supply, or cause to be supplied, to the plaintiff tires whose manufacture would put defendant in contempt. The proofs show that before the injunction decree was entered the Rubber Tire Wheel Company had, by purchase of its stock, obtained entire control of the American Rubber Tire Company, the defendant here and in the equity suit. The plaintiff contends that by reason of this circumstance the decree in the equity suit is not available to defendant as a bar to plaintiff's claim. Inasmuch as the defendant does not seriously controvert this proposition, it is unnecessary to state the reasons which have brought us to the same conclusion.

The result would be reversal and a new trial, but defendant earnestly contends that, irrespective of this particular defense, plaintiff did not make out a case entitling him to go to the jury; and that, therefore, the decision being correct, it should be affirmed, although the trial judge may have based it on insufficient grounds. We do not agree with him. The contract evidently contemplates that defendant will place its moulds with companies who will furnish the plaintiff with moulded tires and channels at prices not exceeding 70 cents for the rubber and 4 cents for the steel. The proof shows that one company which had defendant's moulds refused to furnish plaintiff with tires shaped therein, and that although that fact was brought to defendant's attention it did nothing to secure some other manufacturer who would use its moulds and sell the product to plaintiff. A prima facie case was apparently made out. It may be that when further evidence is introduced it will be found that the contract must be restricted to moulds of some peculiar shape, and that there has been no breach by reason of failure to supply them, or some other defect in plaintiff's case may be developed; but it will best subserve the ends of justice to dispose of all such questions on a new trial, in which plaintiff's case may be fully presented, and its sufficiency determined, before entering upon any consideration of matters of defense.

The judgment is reversed, and cause remanded for new trial.